WOODSON *v.* DEPARTMENT OF SOCIAL SERVICES

1. SOCIAL SECURITY AND PUBLIC WELFARE—WELFARE—TERMINATION OF BENEFITS—DUE PROCESS.

   Procedural due process necessitates an evidentiary hearing and a decision *before* a recipient's welfare benefits are terminated.

2. SOCIAL SECURITY AND PUBLIC WELFARE—WELFARE—TERMINATION OF BENEFITS—CONSTITUTIONAL LAW.

   Provision of the welfare statute that a "request for a hearing shall not stay the implementation of any adverse action taken in accordance with the laws of the state, the rules, regulations, and policies of the department [of social services] to change, cancel, suspend, revoke, or deny assistance", is unconstitutional insofar as it conflicts with a decision of the Supreme Court of the United States holding that a welfare recipient is entitled to an evidentiary hearing and a decision before his benefits are terminated (PA 1969, No 316, § 12).

3. SOCIAL SECURITY AND PUBLIC WELFARE—WELFARE—REDUCTION OF BENEFITS—DUE PROCESS.

   No conceptual distinction can be made between the case of a welfare recipient whose benefits are being terminated, who is entitled to have his benefits continued until after an evidentiary hearing and decision on the termination, and the case of one whose benefit is being reduced but not terminated.

4. SOCIAL SECURITY AND PUBLIC WELFARE—WELFARE—REDUCTION OF BENEFIT—DUE PROCESS.

   A welfare recipient whose benefits are being reduced is entitled to have the benefits continue at their original level until after an evidentiary hearing and decision to reduce the benefits.

REFERENCES FOR POINTS IN HEADNOTES
[1–4] 41 Am Jur, Poor and Poor Laws § 35.
[5] 41 Am Jur, Poor and Poor Laws §§ 13, 16, 17, 20.
[6] 41 Am Jur, Poor and Poor Laws §§ 17, 32, 35.

5. SOCIAL SECURITY AND PUBLIC WELFARE—EARNED INCOME—DISA-
BILITY BENEFITS.

Social security disability benefits paid to a recipient of aid to the
blind is not "earned income" within the meaning of the Federal
statute requiring that a state agency shall disregard certain
"earned income" in determining need of a blind person for
aid, because the purpose of the exemption is to encourage blind
persons currently on the welfare roles to become employed and
ultimately self-supporting, and social security disability bene-
fits do not have this effect (42 USC § 1202[a]8).

6. SOCIAL SECURITY AND PUBLIC WELFARE—EARNED INCOME—DE-
DUCTION.

A reasonably direct relationship must exist between the income-
producing activity and the income return for purposes of the
exemption of earned income from deduction in computing wel-
fare payments.

Appeal from Wayne, James Montante, J. Sub-
mitted Division 1 June 12, 1969, at Detroit. (Dock-
et No. 6,605.) Decided October 7, 1970.

Application by Daniel Woodson to the Michigan
Department of Social Services and R. Bernard
Houston, Director, for reinstatement of his full aid
to the blind benefits. Application denied. Plaintiff
appealed to circuit court. Affirmed. Plaintiff ap-
peals. Affirmed.

*Gerald M. Kaminsky* (with *Peter H. Arkison,* law
student appearing pursuant to GCR 1963, 921.)
(University of Detroit Urban Law Clinic), for plain-
tiff.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *Maxine Boord
Virtue,* Assistant Attorney General, for defendant.

*Amici curiae:* Neighborhood Legal Services Cen-
ters, Community Legal Council, Detroit Metro-

politan Welfare Rights Organization, and West Side Mothers Welfare Rights Organization, by *Thomas L. Smithson* and *Alan W. Houseman* (Neighborhood Legal Services Centers).

Before: Fitzgerald, P. J., and Levin and T. M. Burns, JJ.

Levin, J. The plaintiff, Daniel Woodson, is a blind man. For a number of years he has been receiving welfare benefits from the state under the Federally-assisted aid-to-blind program.[1]

In August, 1967, shortly after he began receiving $79 a month as a social security disability payment, he was advised by the department of welfare that his monthly aid-to-the-blind check would be reduced by that amount, from $124 a month to $45 a month, effective October, 1967.

In September, 1967 Woodson sought and was granted the statutorily-required "fair hearing".[2] The hearing was held on November 9, 1967, *i.e.*, after the reduction in his aid-to-blind benefits was made effective. The director ruled against Woodson. He appealed to the circuit court which also held against him.

The issues are:

(1) Was Woodson entitled to a hearing and a decision before the reduction in his aid-to-blind benefit was made effective?

(2) Is the $79 a month social security disability benefit "earned income" and, therefore, under the governing Federal statute, not deductible from Woodson's aid-to-blind benefit? And, if it is not

---

[1] MCLA §§ 400.14, 400.38, 400.57 (Stat Ann 1968 Rev §§ 16.414, 16.438, 16.457); 42 USC §§ 1202, 1382.

[2] MCLA §§ 400.9, 400.37 (Stat Ann 1968 Rev §§ 16.409, 16.437); 42 USC §§ 1202, 1382. For hearing regulations, see AACS 1969, § R400.901, *et seq.* promulgated December 1, 1969.

earned income, may the State and Federal governments, in making welfare payments, constitutionally distinguish between blind persons based on whether they have earned income?

The first issue has been the subject of much critical comment[3] and a number of judicial opinions.[4] After the argument in this case, the United States Supreme Court decided *Goldberg* v. *Kelly* (1970), 397 US 254 (90 S Ct 1011, 25 L Ed 2d 287) and the companion case of *Wheeler* v. *Montgomery* (1970), 397 US 280 (90 S Ct 1026, 25 L Ed 2d 307). The Court ruled that under the Due Process Clause a welfare recipient is entitled to an evidentiary hearing and a decision before his benefits are terminated.[5]

Woodson's benefits were not, however, terminated. Rather, the amount of his benefit was reduced. In *Daniel* v. *Goliday* (1970), 398 US 73 (90 S Ct 1722, 26 L Ed 2d 57), in a brief *per curiam* opinion, the United States Supreme Court said that its decisions in *Goldberg* v. *Kelly* and *Wheeler* v. *Montgomery* "dealt only with termination and suspension, not

---

[3] See, generally, Reich, The New Property, 73 Yale LJ 733 (1964); Morris, Welfare Benefits as Property: Requiring a Prior Hearing, 20 Adm L Rev 487 (1968); Comment, Due Process and the right to a prior hearing in welfare cases, 37 Fordham L Rev 604 (1969); Comment, The constitutional minimum for the termination of welfare benefits: The need for and requirements of a prior hearing, 68 Mich L Rev 112 (1969); Note, Withdrawal of Public Welfare: The Right to a Prior Hearing, 76 Yale L J 1234 (1967).

[4] See, in addition to the decisions of the United States Supreme Court next cited, *Camerena* v. *Department of Public Welfare* (1969), 9 Ariz App 120 (449 P2d 957); *Machado* v. *Hackney* (WD Tex, 1969), 299 F Supp 644.

[5] PA 1969, No 316, § 12, provides:

"Request for hearing shall not stay the implementation of any adverse action taken in accordance with the laws of the State, the rules, regulations and policies of the department to change, cancel, suspend, revoke, or deny assistance except that a court for good cause shown may order a stay of any such adverse action pending determination of the hearing."

This statutory provision, insofar as it conflicts with *Goldberg* v. *Kelly*, is unconstitutional.

reduction, of benefits.  We think that the bearing of those decisions on the treatment of benefit reductions should be determined in the first instance by the district court on a record developed by the parties with specific attention to that issue".  The Court remanded the case there presented for further proceedings at the district court level.

On the same day, May 25, 1970, that the Court decided *Daniel* v. *Goliday,* the Department of Health, Education and Welfare issued a notice of proposed rule-making concerning the evidentiary hearing constitutionally required by *Goldberg* and the fair hearing before the state agency required by the social security act and also concerning the "continuation of assistance in cases involving individual issues of fact or judgment regarding termination or reduction of assistance".[6]  The proposed regulation requires that assistance be continued during the appeal period and through the end of the month in which the final decision on the fair hearing is reached when it is proposed to reduce as well as when it is proposed to terminate the assistance.  At this writing the proposed regulation has not been adopted.

In *Goldberg* v. *Kelly* the Court said it was undisputed that a welfare recipient has a due process right to an evidentiary hearing after termination.  The Court observed that benefits are a matter of statutory entitlement for persons qualified to receive them and that their termination involves state action that adjudicates important rights and rejected the contention that public assistance benefits are a privilege and not a right.[7]

---

[6] 35 Fed Reg No 105, pp 8448–8450.

[7] Recently in *Evans* v. *Department of Social Services* (1970), 22 Mich App 633, 640, n 16, we observed: "Manifestly, the 'gratuity' (right/privilege) analogies proved too much."  See Van Alstyne, The

The issue before the Court, thus, was not whether relevant constitutional restraints apply to the withdrawal of public assistance benefits but rather the extent to which procedural due process must be afforded the recipient. Is the recipient entitled to an evidentiary hearing before the termination of his benefits or would his right to procedural due process be satisfied by an evidentiary hearing after termination?[8]

Resolution of that issue, said the Court, depended on whether the recipient's interest in avoiding the loss of his benefits is outweighed by the governmental interest in summary adjudication. The Court concluded that the recipient's interest was predominant (p 264):

"For qualified recipients, welfare provides the means to obtain essential food, clothing, housing, and medical care.   *   *   *   Thus the crucial factor in this context   *   *   *   is that termination of aid pending resolution of a controversy over eligibility may deprive an *eligible* recipient of the very means by which to live while he waits. Since he lacks independent resources, his situation becomes immediately desperate. His need to concentrate upon finding the means for daily subsistance, in turn, adversely affects his ability to seek redress from the welfare bureaucracy." (Emphasis by the Court.)

In *City of Detroit* v. *Mashlakjian* (1968), 15 Mich App 236, we held that a person operating a business

---

Demise of the Right-Privilege Distinction in Constitutional Law, 81 Harv L Rev 1439 (1968).

[8] Where there is a right to an administrative hearing the presumption is that the hearing will take place before the decision under review will be made effective. *Opp Cotton Mills* v. *Administrator* (1941), 312 US 126, 153 (61 S Ct 524, 85 L Ed 624); *Ewing, Federal Security Administrator, et al.* v. *Mytinger & Casselberry, Inc.* (1949), 339 US 594 (70 S Ct 870, 94 L Ed 1088); *Dation* v. *Ford Motor Co.* (1946), 314 Mich 152, 167; *Trellsite Foundry & Stamping Company* v. *Enterprise Foundry* (1961), 365 Mich 209, 217.

under an occupational license required to be renewed annually, who had filed for renewal, could continue to operate his business past the expiration date of his last issued license until he was advised of proposed negative action and given an opportunity for a hearing on his renewal application.

Woodson's need for the $79 a month, deducted by the state from his monthly aid-to-blind benefit, is, we think, as great as Mashlakjian's need to continue to be permitted to operate a public lodging house in downtown Detroit. Once the principle is accepted that no distinction can properly be drawn between the right of a welfare recipient to the continuation of his welfare benefits and the right of an occupational licensee to a continuation of his license, that neither can be terminated without a hearing which satisfies the requirements of procedural due process, we think it will be administratively, judicially, and conceptually difficult to distinguish between one welfare recipient and another based upon the amount of the reduction involved in a particular case.

Woodson's aid-to-blind benefit was reduced by almost two-thirds. While the amount of the reduction was made up by the receipt of an equivalent amount from another source and, thus, the impact of the reduction was not as great as it would have been had it been ordered for some other reason, the level of benefits is so abysmally low that, decided even in terms of a balancing of his necessities as against the government's interest in summary adjudication, in his case as well the benefits should have been continued until the hearing was conducted and a decision rendered.[9] From an administrative and

9 It could be said that the issue is moot, because we could order restoration of Woodson's benefits from the date of reduction, if we

judicial point of view it will be far simpler to conduct prompt hearings in cases of welfare recipients, such as Woodson, involving reduction of benefits than to attempt to make fine distinctions between one case and another, distinctions which, if they are to be drawn at all, should be made by an independent person, if the prior hearing right is to be meaningful.

The attorney general argues that Woodson's case does not involve an issue of fact or judgment. This contention we reject. While Woodson did not dispute receipt of the $79, he challenged the agency's interpretation of the governing Federal statute and also challenged the reduction on constitutional grounds. Those issues clearly involve questions of judgment on which he is entitled to be heard. Even if the hearing officer's and the director's authority to render a decision in his favor on those grounds is limited, that does not affect the applicability of the rationale of the Supreme Court's *Goldberg* v. *Kelly* decision, namely (1) welfare benefits cannot be taken away without a hearing which satisfies the requirements of procedural due process, and (2) because of the immediate and overwhelming effect

were to decide on the merits that he is entitled to such an order; and, if he is not, then he has nothing to complain about. On that analysis, however, no court would ever reach the issue: In every case the welfare recipient is or is not entitled to a restoration of his benefits.

Mootness does not withdraw jurisdiction; it is rather, a policy of judicial self-restraint which prevents the litigation of issues whose outcome has ceased to be of any importance. 20 Am Jur 2d, Courts, § 81, p 443. Where the issue is of "sufficient importance" a court may decide it "even though it may be in the nature of a declaratory decree." *Lafayette Dramatic Productions, Inc.* v. *Ferentz* (1943), 305 Mich 193, 218; *Wattles, ex rel. Johnson,* v. *Upjohn* (1920), 211 Mich 514, 539; *Robson* v. *Grand Trunk W. R. Co.* (1966), 5 Mich App 90, 99; Anno: 132 ALR 1185, Public interest as ground for refusal to dismiss an appeal, where question has become moot, or dismissal is sought by one or both parties.

We note that the United States Supreme Court was not deterred from deciding the issues raised in *Goldberg* v. *Kelly* and *Wheeler* v.

of an adverse decision on the recipient, benefits
should be continued until the conclusion of the ad-
ministrative hearing when the recipient is in a posi-
tion to prosecute an appeal from an adverse admin-
istrative determination and seek a judicial stay.
In this connection we note that the Supreme Court
appears to have eschewed any distinction based
upon whether there are disputed factual issues in-
volved.[10]

Turning to the meritorious question, Woodson
challenges the reduction of his State aid-to-the-blind
benefits by the amount of his social security disabil-
ity benefit. At issue is a Federal provision exempt-
ing "earned income" from deduction:

"A state plan for aid to the blind must    *    *    *
provide that the state agency shall, in determining
need, take into consideration any other income and
resources of the individual claiming aid to the blind
*    *    *    except that, in making such determination,
the state agency (A) shall disregard the first $85
per month of earned income, plus one-half of earned
income in excess of $85 per month."    42 USC § 1202
(a)(8).[11]

---

*Montgomery* because, after a decision on the merits, relief could be
given the plaintiffs in those cases if they were found to be entitled
thereto.

[10] See *Goldberg* v. *Kelly, supra,* n 15.

The law-fact distinction is not meaningful. There can be frivolous
issues of fact as well as of law, and some arguable legal positions are
harder to resolve than many factual disputes.

If the state claims that the recipient's position is frivolous then it
should cause the hearing to be held promptly or, perhaps, in an un-
usual case, apply to a court for relief and thereby allow an independ-
ent judicial officer to appraise the claim of frivolity.

Legislative determinations can, of course, be made without a hear-
ing and this is true whether the legislature itself or an agency, pur-
suant to duly delegated authority, makes the determination. Thus, a
general reduction of benefits can be made without a hearing and its
effectiveness need not be stayed during a judicial challenge of the
reduction; in such a case a stay would be obtainable only upon appli-
cation to and order of a court.

[11] Similarly, see 42 USC § 1382(a)(14)(A).

Woodson contends that the $79 a month social security disability benefit is in fact earned income. He stresses that his right to receive that benefit accrued as a result of social security taxes paid while he was employed and that the amount which he paid to the government is regarded as income for the purpose of computing United States income tax.[12] He argues that the amounts paid to the government are, when returned to him in the form of social security disability benefits, merely deferred earned income. But, on the same analysis, it could be contended that dividends and interest paid on securities—clearly not earned income—are, when the securities have been purchased out of wages and other compensation, earned income. We do not think that the Congress had such refinements in mind when it exempted earned income from consideration in determining a blind person's need for aid.

For some time the Federal administrative interpretation has been that earned income does not include "benefits (not in the nature of wages, salary, or profit) accruing as compensation or reward for service, or as compensation for lack of employment; for example, pensions and benefits, such as United Mine Workers' benefits or veterans' benefits."[13]

The stated purpose of the subchapter concerning grants to the States for aid to blind is to enable them to furnish financial assistance to needy indi-

---

[12] The transcript of the administrative hearing is unclear as to the bases for Woodson's eligibility for social security. It does not appear whether he was self-employed or worked as an employee for someone else.

[13] See *Naudzius* v. *Lahr* (1931), 253 Mich 216, 222; *Fitzpatrick* v. *Liquor Control Commission* (1946), 316 Mich 83, 94; *Metropolitan Funeral System Association* v. *Commissioner of Insurance* (1951), 331 Mich 185, 192; *Godsol* v. *Unemployment Compensation Commission* (1942), 302 Mich 652, 659.

viduals who are blind and of encouraging them to furnish rehabilitation and other services to help such individuals obtain or retain capacity for self-support or self-care. With that in mind, we think it clear that the purpose of the exemption of earned income is to encourage blind persons currently on the welfare rolls to become employed and ultimately to become self-supporting. The exemption serves as an incentive to the blind welfare recipient to obtain employment by allowing him to continue to receive welfare payments if he should do so. Treating *deferred* "income", such as disability benefits, as earned income when received would not advance that purpose.

Social security disability benefits are not paid in compensation for current activity. The relationship between the possible receipt years hence of social security benefits and current enjoyment is so attenuated that recognizing such benefits when received as earned income would not, in our opinion, encourage blind persons to become employed and self-supporting.

For purposes of the exemption of earned income from deduction in computing welfare payments there must be a reasonably direct relationship between the income producing activity and the return. The complex formulas which determine the ratio between social security tax payments and ultimate benefits, as well as the contingent nature of the events which entitle persons to a given schedule of benefits, render too remote the link between Woodson's former employment and his current disability benefit.

We do not see any constitutional infirmity in distinguishing between blind persons who do and who do not have earned income in making welfare payments. The purpose of the classification, encour-

aging blind persons to become employed and self-supporting, is not only reasonable, it is commendable.[14]

Affirmed.

All concurred.

---

[14] See Handbook of Public Assistance Administration IV–3162, 3163 (3/29/63); now repeated and codified as 45 CFR § 233.20(a) (6)(vi).