**John PROVOST and Audrey Provost on behalf of themselves and all persons similarly situated, Plaintiffs,**

**Hattie Raymond, Intervenor,**

v.

**Joseph W. BETIT, Commissioner of Social Welfare, Defendant.**

**Civ. A. No. 6091.**

United States District Court,
D. Vermont.

April 7, 1971.

John A. Dooley, III, Vermont Legal Aid, Inc., Burlington, Vt., for plaintiffs and intervenor.

H. Russell Morss, Jr., Asst. Atty. Gen., Montpelier, Vt., for defendant.

Before WATERMAN, Circuit Judge, and LEDDY and OAKES, District Judges.

LEDDY, District Judge.

The question presented here is whether the Vermont Department of Social Welfare can, in accordance with the mandates of the due process clause of the Fourteenth Amendment, effectuate state-wide policy changes in the Vermont Social Welfare program having the overall effect of increasing the benefits of some recipients and reducing that of others without first affording the latter a pre-reduction hearing.

From the evidence adduced, the facts are as follows:

Sometime between October and November 1, 1970, the Vermont Department of Social Welfare revised its Aid to Needy Families with Dependent Children (ANFC) program. The revision increased allowances for "basic need" from 89.5 per cent to 100 per cent allowed for calculated basic need. Special circumstances allowances (life insurance, telephone, etc.) were discontinued. The overall result of such revision was that most ANFC recipients received increased benefits, some recipients remained in status quo as to benefits but others were reduced because the increase in the basic need allowance did not offset their loss of special circumstance benefits previously allowed prior to the Vermont ANFC revision.[1]

Plaintiffs, John and Audrey Provost, were among those ANFC recipients who suffered an overall diminution of benefits pursuant to the revised plan. The benefits of plaintiffs were $109.00 before the revision and were reduced to $47.00 thereafter, effective November 1, 1970.[2] Written notice informing plaintiffs of the reduction was sent by the Department on October 14, 1970. Plaintiffs admit in their complaint that they received such notice and that they were apprised of the reasons for reduction. On October 29, 1970, plaintiffs made a timely request for a fair hearing before the Vermont Board of Social Welfare and such a hearing was granted and scheduled for November 18, 1970. Before the hearing could be held, plaintiffs filed the present action on November 9, 1970. By mutual consent of the parties, the hearing before the Board of Social Welfare was continued.

1. Available data indicates the following effects stemming from the Vermont ANFC revision: 95.5 per cent of the ANFC recipients received increased benefits; .8 per cent remained unchanged and 3.7 per cent suffered reduction. The latter is the class represented by plaintiffs.

2. Sometime prior to hearing on the merits, the benefits of the Provosts were partially restored. The final result showed that before the revision the Provosts were receiving $109.00 per month. At the time the case was heard on the merits, they were receiving $59.00 per month.

Jurisdiction is based upon the Civil Rights Act, 42 U.S.C. § 1983, 28 U.S.C. § 2201 and 28 U.S.C. § 1343(3). A temporary restraining order was issued pending the disposition of plaintiffs' case on the merits. Class action procedure was approved under Rule 23 and this three-judge court was convened in accordance with 28 U.S.C. § 2281 to hear the merits of the case.

One Hattie Raymond petitioned the Court to intervene. She now has moved to withdraw her petition and this motion is granted.

The plaintiffs rely on Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L. Ed.2d 287 (1970), and subsequent lower court decisions which reason, by analogy to *Goldberg*, that a reduction in welfare benefits must be preceded by notice and an opportunity to be heard. See generally, Woodson v. Houston, 27 Mich.App. 239, 183 N.W.2d 465 (1970); Morgan v. Martin, 2 CCH Pov.L.Rep. ¶ 12,113 (N.D.Colo.1970); Merriweather v. Burson, 325 F.Supp. 709 (N.D.Ga.1970); and Figueroa v. Wyman, 63 Misc.2d 610, 313 N.Y.S.2d 274 (1970). This reliance, it would appear, is misplaced. We are not here dealing with a factual determination that the level of an individual's grant should be reduced because of a change in individual circumstances, but rather with a state-wide social welfare policy impartially affecting all welfare recipients.

Though plaintiffs have failed to allege that Vermont's policy is inconsistent with federal regulations in effect at this time, it is helpful to examine federal regulations scheduled to take effect in the near future.

After the Supreme Court announced its decision in Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), the Department of Health, Education and Welfare issued notice of proposed rule-making on the question of state fair hearing requirements. See 45 C.F.R. § 205.10 (July 1, 1970). Replacement regulations, recently published and effective in April, 1971, set down more elaborate guidelines for fair hearings.

45 C.F.R. § 205.10 is to be amended to read, in part:

(c) (5) In cases of any proposed action to terminate, suspend or reduce assistance:

(i) The State or local agency will give timely and adequate advance notice detailing the reasons for the proposed action.

\* \* \* \* \* \*

(iii) (a) In cases in which there is a request for a fair hearing within the advance notice period:

(1) Assistance is continued until the fair hearing decision is rendered \* \* \* unless a determination is made by the State agency, \* \* \* that the issue is one of State agency policy and not one of fact or judgment relating to the individual case, including a question of whether the State agency rules or policies were correctly applied to the facts of the particular case. 36 Fed.Reg. 3034 (Feb. 13, 1971).

The uncontroverted evidence is that the reduction of the plaintiffs' benefits resulted from changes in state-wide policy, and that therefore, under the sweeping reform to be instituted under the new regulations, the Vermont Board of Social Welfare would have been more than in compliance. The plaintiffs admit they were given advance notice detailing the reasons for reduction and they also admit that the Vermont Board of Social Welfare was ready and willing to give them an individual hearing upon their reduction. The new federal regulations will provide only for a group hearing when "the sole issue involved is one of an agency policy." Proposed HEW Regs., 205.10(c) (4) (v), 36 Fed.Reg. 3034 (1971). The hearing need not, however, be held prior to the termination of benefits. § 205.10(c) (5) (iii) (a) (1).

■■■ The "public hearing" procedure is now very familiar to federal administrative agencies. See generally, Administrative Procedure Act, 5 U.S.C. § 553 (1966). Whether the Constitution requires it is another question. There is

a distinct difference between the rule-making and the adjudicative functions of an agency. While an adjudicative proceeding applies set standards to an individual case, rule-making results in a change of standards generally applicable to a class. The Supreme Court recognized the distinction in the *Goldberg* decision when it stated that

> [t]hese rights are important in cases such as those before us, where recipients have challenged proposed terminations as resting on incorrect or misleading factual premises or on misapplication of rules or policies to the facts of particular cases. 397 U.S. at 268, 90 S.Ct. at 1020.

The distinction is important. As the terms imply, exercise of the rule-making function of an agency is akin to legislative enactment, albeit delegated. Exercise of the adjudicative function is analogous to a judicial proceeding in which particular facts are measured against legislative standards of uniform applicability. The scope of judicial review mandated by the due process clause is of necessity different in the two cases.[3] When a due process challenge to a legislative enactment is presented, the doctrine of separation of powers requires that the court may examine only the constitutionality and not the wisdom of a legislative enactment. Ferguson v. Skrupa, 372 U.S. 726, 730, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963); McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819). When the challenged proceeding is judicial in nature, however, and therefore removed from the electorate, due process requires some or all of the procedural safeguards (depending upon the nature of the proceeding) which have been found essential to the fair and equitable treatment of individuals. E. g., Greene v. McElroy, 360 U.S. 474, 496–497, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959). See generally, L. Jaffe, Judicial Control of Administrative Action (student ed. 1964), and particularly ch. 14 "Judicial Review: Questions of Law," pp. 546–594.

Goldberg v. Kelly then, does no more than to classify an administrative determination of substantial interest to an affected individual as falling into the category of an adjudicative decision requiring the basic prerequisites of procedural due process.

On the other hand, the instant case presents a challenge to an administrative policy which seeks to revise the Vermont Social Welfare Plan not only in plaintiffs' case but for the benefit of all citizens. If the plaintiffs had pointed out that such policy was inconsistent with existing federal law, this would be a proper forum to decide the issue. See Boddie v. Wyman, 434 F.2d 1207 (2d Cir. 1970). We are at a loss, however, to see the constitutional issue in the Provosts' case. While it may be that the "group hearing" required by the new federal regulations establishes a sound procedure to insure careful consideration of all viewpoints by a state agency before

---

3. A Michigan court which held invalid a reduction in benefits without prior hearing noted that:

> Legislative determinations can, of course, be made without a hearing and this is true whether the legislature itself or an agency, pursuant to duly delegated authority, makes the determination. Thus, a general reduction of benefits can be made without a hearing and its effectiveness need not be stayed during a judicial challenge of the reduction; * * * Woodson v. Houston, 27 Mich.App. 239, 183 N.W.2d 465, fn. 10, (1970).

See also Merriweather v. Burson, 325 F. Supp. 709 (N.D.Ga.1970):

> [W]here a reduction or termination is not thus grounded on particular facts relating to an individual recipient or assistance group, there is no need for an evidentiary hearing. Thus, where across-the-board cuts in funding necessitate wholesale reductions in benefits or changes in other programs such as social security benefits result in "automatic" reductions or terminations, it would be a useless expenditure of money to hold hearings at the request of any number of recipients opposed to reductions dictated by the state or federal legislature, rather than by the facts governing eligibility of particular recipients.

a state-wide change in policy is effected, the soundness of such a procedure lies in its likelihood of adoption of reasonable policies less prone to judicial attack, rather than in constitutional law.

Goldberg v. Kelly, *supra*, applied a balancing test in reaching its result: the interest of the eligible recipient who survives on welfare to receive uninterrupted benefits, coupled with the State's interest that he not be erroneously terminated, clearly outweighs the State's fiscal interest in discontinuing benefits before a fair hearing. 397 U.S. at 266, 90 S.Ct. 1011.

However, in the case at bar, we must balance the plaintiffs' interest in continuous benefits, and the State's interest in not erroneously cutting them back, with the power of the State to act and legislate for the benefit of all welfare recipients. Plaintiffs do not present a factual issue in their individual case but challenge instead the fundamental power of the State of Vermont to regulate the overall plan of distribution of its welfare monies.

In King v. Smith, 392 U.S. 309, 88 S. Ct. 2128, 20 L.Ed.2d 1118 (1968), the Supreme Court said that

> States have considerable latitude in allocating their AFDC resources, since each State is free to set its own standard of need and to determine the level of benefits by the amount of funds it devotes to the program. 392 U.S. at 318–319, 88 S.Ct. at 2134.

In Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), the Supreme Court citing Goldberg v. Kelly, *supra*, noted that

> [t]he Constitution may impose certain procedural safeguards upon systems of welfare administration. But the Constitution does not empower this Court to second-guess state officials charged with the difficult responsibility of allocating limited public welfare funds among the myriad of potential recipients. 397 U.S. at 487, 90 S.Ct. at 1163 (citations omitted).

We feel that the procedural safeguards set down in Goldberg v. Kelly, *supra*, would be stretched beyond recognition if we were to apply them as plaintiffs contend. We prefer, instead, to follow the advice of a distinguished jurist:

> Nor is it desirable for a lower court to embrace the exhilarating opportunity of anticipating a doctrine which may be in the womb of time, but whose birth is distant * * * Spector Motor Service v. Walsh, 139 F.2d 809, 823 (2d Cir. 1943) (L. Hand, J., dissenting).

 We hold on the facts of this case that when Vermont effectuated this plan of revision which had the unfortunate effect of reducing plaintiffs' benefits, due process was complied with as to plaintiffs and that class of persons, who like plaintiffs, were reduced because of the ANFC overall revision.

Plaintiffs' petition to reopen on the basis of new evidence has been considered and is hereby denied since it would be irrelevant to the issues decided herein.

Accordingly, plaintiffs' complaint is dismissed.