Joyce YEE–LITT et al., Plaintiffs,

v.

Elliot L. RICHARDSON et al., Defendants.

No. C–71–2286 OJC.

United States District Court, N. D. California.

Jan. 17, 1973.

Armando M. Menocal III, Christopher N. May, San Francisco Neighborhood Legal Assistance Foundation, San Francisco, Cal., for plaintiffs.

James L. Browning, Jr., U. S. Atty., Richard F. Locke, Asst. U. S. Atty., Evelle Younger, Atty. Gen. of Cal., David J. Bowie, Deputy Atty. Gen., San Francisco, Cal., for defendants.

Before HAMLIN, Circuit Judge, and EAST and CARTER, District Judges.

## MEMORANDUM AND ORDER

OLIVER J. CARTER, District Judge.

Plaintiffs filed this action to declare unconstitutional and to enjoin federal and state regulations which permit the summary termination of welfare benefits prior to a hearing. The Federal Defendant is Elliot L. Richardson, the then Secretary of the United States Department of Health, Education and Welfare, responsible for the administration of the Social Security Act's categorical assistance programs. The State Defendant is Robert B. Carleson, Director of the California State Department of Social Welfare, the agency which administers California's categorical assistance programs. Jurisdiction for this Court is based on 28 U.S.C. §§ 2281, 2284. This action is also brought under 28 U.S.C. §§ 1343(3) and (4), 28 U.S.C. §§ 2201 and 2202, 42 U.S. C. § 1983, and the Fifth and Fourteenth Amendments to the United States Constitution.

Plaintiffs have brought this action on behalf of themselves and all other California recipients under the categorical assistance programs of the Social Security Act, and all persons whose assistance under these programs has been

reduced or terminated pending appeal since September 3, 1971, notwithstanding their timely request for a fair hearing. The Court finds that this class is so numerous that joinder of all members is impracticable. All members of the class are governed by the same California regulations and statutes and therefore are treated in a similar manner by the State defendants. The Court further finds on the basis of the hearings heretofore held, that the representative parties herein will fairly and adequately protect the interest of the class. Accordingly, the Court concludes that this action is properly maintainable as a class action for the purpose of securing injunctive relief. F.R.Civ.P. 23(a) and 23(b)(2).

The California regulations being challenged, Title 22 Cal.Admin.Code § 22–022.3 issued pursuant to California's Welfare and Institutions Code Section 10553, permit the reduction or termination of welfare benefits prior to a hearing. Whenever the Chief Referee [1] determines that the recipient's appeal only raises issues of policy and no issue of fact or judgment in the individual's case, aid is not paid pending the fair hearing. Plaintiffs also challenge the federal regulation, 45 C.F.R. § 210.10(a)5, which allows the State to implement this fact-policy system of distinguishing among timely appeals. Plaintiffs' contention is that whenever a timely appeal is made, minimum standards of due process require a hearing prior to reduction or termination of benefits. The hearing must meet the minimum due process standard as explained in Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

The plaintiffs have set forth three theories as basis for the relief they seek. The first theory is that due process requires an opportunity for a hearing in all cases prior to termination or reduction of welfare benefits. Plaintiffs next contend that requiring a welfare recipient to plead facts on appeal places an unfair burden on a class of people unable to sustain that burden thereby depriving them of their right to a hearing. And finally, plaintiffs argue that the fact-policy distinction is so vague and lacking in standards that arbitrary decisions by the Chief Referee are commonplace thereby depriving recipients of a hearing in violation of their due process rights. In reply, the State contends that there is no constitutional right to a prior hearing in all cases and that the alleged pleading burden and alleged arbitrary decisions have been remedied by recently implemented state regulations.

Without doubt the landmark decision in the area of welfare hearings is Goldberg v. Kelly, *supra*. The opinion set out the minimum due process requirements for welfare recipients prior to termination of benefits. The Court said that due process requires a hearing prior to termination when the recipient makes a timely request to be heard. However, the present action raises a point not decided in *Goldberg*. The welfare recipients in *Goldberg* challenged the State's determination of factual issues. Accordingly, the Supreme Court made no comment on the rights of welfare recipients whose appeals raised only policy issues. Following the decision in *Goldberg*, the regulations involved here were implemented inferentially on the assumption that the Supreme Court had approved of pre-hearing terminations where only policy issues were raised.

The defendants have cited several opinions which state in part that evidentiary hearings are needed only where factual contentions are raised. See e. g. Provost v. Betit, 326 F.Supp. 920 (D.Vt. 1971); Russo v. Kirby, 453 F.2d 548 (2 Cir., 1971); Connecticut State Dept. of Public Welfare v. H. E. W. et al., 448 F.2d 209 (2 Cir., 1971). These decisions, although not on point with the facts of this action, support defendants' position that no prior hearing is required by due process where no facts are in dispute.

Prior to convening this three judge Court, a temporary restraining order

---

1. The Chief Reference to the State official who makes the final determination as to whether aid will be paid pending appeal.

(T.R.O.) was made by Chief United States District Judge Oliver J. Carter, which prevented any pre-hearing terminations or reductions of welfare recipients who had filed timely appeals. At the first hearing before this Court, the State moved to modify the T.R.O. The State argued that by implementing new regulations—the ones now in issue—they would relieve recipients from the alleged pleading burden. Defendants also contended that the new regulations would give the Chief Referee more information with which to decide whether questions of fact or judgment were raised by the recipient's appeal. Since the Supreme Court had instructed lower courts to allow agencies to solve their problems if possible, this Court agreed to allow implementation of the new regulations. See Richardson v. Wright, 405 U.S. 208, 92 S.Ct. 788, 31 L.Ed.2d 151 (1972). The Court acted because of the close legal question presented concerning the validity of the fact-policy distinction; because the regulations might lift what appeared to be a pleading burden on the welfare recipients and because the regulations might prevent erroneous decisions thereby demonstrating the viability of the fact-policy distinction.

The concept underlying the new regulations is that additional contact by the county worker with the recipient produces more information with which the Chief Referee makes a more informed decision. These regulations have now been in effect since March 16, 1972, pursuant to this Court's order. At the latest hearing, September 28, 1972, argument was heard concerning how the regulations had worked and the effect if any upon plaintiffs' three claims. At the close of the hearing, plaintiffs renewed their motion for a preliminary injunction, the State defendant renewed his motion for summary judgment, and the Federal defendant renewed his motion to dismiss.

Plaintiffs' challenge to the State regulations is that they are per se unconstitutional or alternatively that they are unconstitutional in effect. After reviewing all the briefs, including regular statistical reports on the effect of the new regulations, the Court concludes that the regulations deny welfare recipients due process according to Goldberg v. Kelly, *supra*. The Court finds that the regulations work to erroneously deny pre-termination hearings to welfare recipients who have raised factual issues on appeal. For the reasons given below, the Court concludes that new regulations would probably not remedy the errors because of the inherent difficulties in using this fact-policy distinction.

Before modifying the T.R.O. the Court was satisfied that the proposed regulations would be as effective as possible. In part the Court was satisfied by the State's assurances that there was no lack of standards in using the fact-policy system, but that there was merely a lack of information for the decision maker. The State also strongly claimed that the regulations would relieve the burden on a recipient to *plead* facts in his request for a hearing. Because this Court was satisfied that the regulations would work as described, the T.R.O. was modified. Several months after the T.R.O. was modified the effectiveness of these regulations was challenged. On the basis of the information presented at the hearing of September 28, 1972, the Court concludes that the regulations did not work as planned.

In at least two areas recipients were erroneously denied hearings prior to termination or reduction. The first type of erroneous denial can best be classified as mistakes. The Court realizes that no regulatory system can be foolproof; however, any court is constrained to try to minimize mistakes in the welfare area. As the Supreme Court said in *Goldberg* at page 264 of 397 U.S., at page 1018 of 90 S.Ct., "For qualified recipients, welfare provides the means to obtain essential food, clothing, housing, and medical care. . . . Thus the crucial factor in this context— . . . —is that termination of aid pending resolution of a controversy over eligibility may deprive an *eligible* recipient of the very means

by which to live while he waits." (Footnote and citation omitted) Although the Court does not know the number of these admitted mistakes, there were several presented by the plaintiffs as examples.[2] The only way the Court can be sure that similar mistakes will not recur is to pay aid pending in all cases where timely appeals are filed.

The second area of erroneous pre-hearing terminations arises from what appears to be the State's misuse of these regulations. During the period these new regulations have been in effect, thousands of California welfare recipients had their aid reduced as the result of a newly effective welfare code section (not here in issue). See Villa v. Hall, 7 Cal.3d 926, 103 Cal.Rptr. 863, 500 P.2d 887 (1972). Although many of these recipients filed timely notice of appeal from the reductions, they were still reduced or terminated from benefits prior to any hearing. In the examples presented to this Court, it appears that many of these recipients raised what appeared to be factual issues yet still did not receive aid pending a hearing. [See Plaintiffs' Supplemental Memorandum filed September 21, 1972, Exhibit B]. The State explains this apparent inconsistency with the new regulations by saying that these recipients only raised policy issues. The State argues that because the Chief Referee had sufficient factual information in each case, he was sure that the decision to terminate or reduce was correct. Therefore since the decision to terminate or reduce was factually correct, the recipient could only be raising a policy challenge concerning the implementation of the new code section.

When the Court modified the T.R.O., it did not foresee that the regulations could be used in this way. This is not to say that the State has purposefully misused the regulations or misled the Court. However, the Court does find that this episode vividly demonstrates the danger of making critical decisions concerning the eligibility of welfare recipients on the basis of the fact-policy distinction. Again quoting from Goldberg v. Kelly, 397 U.S. at page 266, 90 S.Ct. at page 1019, where the court was quoting from the lower court decision in that case, " '[t]he stakes are simply too high for the welfare recipient, and the possibility of honest error or irritable misjudgment too great, to allow termination of aid without giving the recipient a chance, if he so desires, to be fully informed of the case against him so that he may contest its basis and produce evidence in rebuttal.' "

■ On the basis of the evidence to date, this Court concludes that the fact-policy distinction is not viable in the welfare context for making the critical determination of whether aid will be paid pending a hearing. The United States Court of Appeals for the Seventh Circuit recently reached a similar conclusion, Mother's and Children's Rights Organization et al. v. Sterrett et al., 467 F.2d 797 (7 Cir., 1972). Also see Woodson v. Houston, 27 Mich.App. 239, 183 N.W.2d 465 (1970).

### Conclusion

■ When the Supreme Court fashioned the minimum due process standards for terminating welfare recipients, it was doing so in the context of a factual appeal. The defendants have interpreted Goldberg to allow separate treatment for recipients whose appeals do not raise issues of fact or judgment. However, implementation of this policy of distinguishing factual from policy appeals has resulted in the improper denial of aid pending for significant numbers of welfare recipients. These improperly terminated recipients raised factual issues on their timely appeals yet did not receive aid pending in violation of Goldberg v. Kelly. The Court concludes that the State even when using its best effort with seemingly innovative regulations, cannot operate the fact-policy system without many erroneous decisions.

2. Plaintiffs' Supplemental Memorandum, filed September 21, 1972, Exhibit B.

The Court further concludes that the fault does not lie with the State, but rather with the unclear and unmanageable fact-policy distinction which the regulations have created. Accordingly, the Court concludes that the state regulations in issue deny minimum due process to a significant number of California welfare recipients who timely appeal from notices of termination or reduction from benefits.

Having found that the state regulations work a denial of due process on plaintiffs, the Court concludes that a preliminary injunction should issue. Further use of these regulations would immediately and irreparably harm each eligible recipient who is denied aid pending his timely appeal. The *Goldberg* decision militates against any further delay in enjoining the regulation, as there is a strong possibility that plaintiffs will prevail at a trial on the merits.

Accordingly, it is ordered that defendant Robert B. Carleson is preliminarily enjoined, pending the further order of this Court, from withholding, or continuing to withhold, welfare assistance benefits pursuant to Title 22, Cal.Admin. Code § 22–022.3 from persons who have made or may make a timely request for a fair hearing.

It is further ordered that the State defendant's motion for summary judgment, be, and the same is, hereby denied.

It is further ordered that the Federal defendant's motion to dismiss be, and the same is, hereby granted without prejudice,[3] and said defendant is hereby dismissed.

---

3. The Federal defendant's motion to dismiss is made on the basis that this Court lacks personal jurisdiction and venue. The Court concludes that this argument is incorrect for the reasons given in Macias v. Finch, 324 F.Supp. 1252 (N.D.Cal.1971). However, because the federal statute allowing the state regulation here in issue has not been challenged under 28 U.S.C. § 2282, the Court concludes that it would be inappropriate to examine into or make an order respecting that statute. Therefore, no purpose is currently served by the retaining of the Federal defendant in this action.

HAMLIN, Circuit Judge (concurring and dissenting):

I respectfully dissent from that portion of the majority order which grants broad injunctive relief against defendant Carleson. The majority objects to the challenged regulations because of errors committed by welfare administrators in determining whether a fair hearing request raises issues of fact or policy. While it might be that the regulations in question do not guarantee that no mistakes will be made, they are designed to, and reasonably do, provide aid pending fair hearings where factual matters are in dispute. This seems to be all that is required by Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

Defendant's affidavits controvert the implication that the present system produces an excessive number of inequities and indicate that errors have been kept to a very small percentage.[1] Certainly errors are inherent in any very large scale administrative undertaking and I would expect that the defendant would use every effort to reduce even the small percentage now existing.

As Judge Learned Hand has stated, " . . . due process of law does not mean infallible process of law." Schechtman v. Foster, 172 F.2d 339, 341 (2nd Cir. 1949).

The record is devoid of any evidence of lack of good faith in the administration of the regulations.

As indicated above, I would not grant the sought-for injunction.

---

1. From the thousands of fair hearing requests filed monthly (4,090 requests were filed in October, 1972, alone) plaintiffs have submitted a list of 49 cases where welfare recipients have allegedly been erroneously denied aid pending a hearing. Plaintiffs' Supplemental Memorandum, September 21, 1972. But only five such cases involve errors in administering the fact-policy distinction. Defendant's Supplemental Memorandum, September 28, 1972.