FARMER v CHRYSLER CORPORATION (ON REMAND)

1. Workmen's Compensation—Black Lung Act—Black Lung Benefits—Coal Miners—Pneumoconiosis—Disability—Death—Federal Statutes.

   The "black lung" act is concerned with the health and safety of coal miners, and since few states provide benefits for death or disability due to pneumoconiosis, it is the purpose of the act to provide benefits in cooperation with the states to ensure that in the future adequate benefits are provided to coal miners and their dependents in the event of their death or total disability (83 Stat 792 [1969], 30 USC 901).

2. Workmen's Compensation—Black Lung Act—Claims—Federal Government—State Government—Federal Criteria.

   In essence, the original plan of the Federal government on black lung disease legislation provided that the Federal government would pick up the lifetime cost of the huge backlog of claims that had accumulated over the decades, while the industry would pick up the burden of paying the claims of those still working through state compensation laws that meet Federal criteria.

3. Workmen's Compensation—Black Lung Benefits—Federal Benefits—State Benefits—Setoffs—Statutes.

   Black lung disease benefits, under Federal legislation, are meant to be at least in part supplemental to state benefits, and to the extent that the benefits are duplicitous the Federal government would offset the appropriate amount; the reverse is not true, and an offset of black lung disease benefits from state workmen's compensation would cancel Federal benefits and lead to a double setoff (83 Stat 792 [1969], 30 USC 901).

References for Points in Headnotes

[1–3] 54 Am Jur 2d, Mines and Minerals §§ 169, 219.
   81 Am Jur 2d, Workmen's Compensation § 126.
[4, 5] 82 Am Jur 2d, Workmen's Compensation § 364.
   Right to compensation under workmen's compensation act affected by pension, insurance, gratuities, or other benefits not derived from the act itself. 119 ALR 920.

4. WORKMEN'S COMPENSATION—FEDERAL BENEFITS—STATE BENEFITS—
    OFFSETS—STATUTORY AUTHORIZATION—RIGHT TO COMPENSATION.

   In Michigan, where there is no statutory authorization allowing
      Federal offsets from state benefits, the receipt of Federal bene-
      fits does not affect a worker's right to workmen's compensation.

5. WORKMEN'S COMPENSATION—DOUBLE RECOVERY—WORKMEN'S COM-
    PENSATION BENEFITS—SUPPLEMENTAL BENEFITS.

   A section of the workmen's compensation act the purpose of
      which is to avoid double recovery and savings, health insurance
      and various benefit fund programs shall not be taken into
      consideration in fixing compensation under the act applied to
      supplemental benefits and not workmen's compensation bene-
      fits (MCLA 418.811; MSA 17.237[811]).

Appeal from Workmen's Compensation Appeal
Board. Submitted January 8, 1976, at Detroit.
(Docket No. 23230.) Decided December 9, 1976.

Claim by Milford Whicker against Chrysler Cor-
poration for workmen's compensation. Benefits al-
lowed. Defendant appealed by leave granted. Af-
firmed. *(Whicker v Chrysler Corp,* Docket No.
23230, decided April 6, 1976 [unreported].) Joan
Farmer, administratrix of the estate of deceased
plaintiff Milford Whicker, was substituted as plain-
tiff and defendant applied for leave to appeal to
the Supreme Court. In lieu of leave granted the
Supreme Court remanded to the Court of Appeals
for reconsideration as on rehearing. *(Farmer v
Chrysler Corp,* 397 Mich 841 [1976].) On remand,
affirmed.

*Silverstein & Silverstein,* for plaintiff.

*Lacey & Jones* (by *Hayim I. Gross),* for defend-
ant.

Before: J. H. Gillis, P. J., and Quinn and R. E. Noble,* JJ.

On Remand

J. H. Gillis, P. J. From 1934 to 1964 (except for three years of Army service) Milford Whicker worked in Kentucky coal mines. He then moved to Detroit and was employed by the Hygrade Food Company from 1964 until early 1969. In March of 1969, he began his employment with defendant-appellant, Chrysler Corporation. Whicker's last assignment at Chrysler consisted of spraying glass with chalk dust before it went into the furnace. He stated that after five or six weeks at this assignment he had trouble climbing steps and shortness of breath. Upon receiving a doctor's advice, Whicker gave up his job with Chrysler in 1970. It was later discovered that Whicker was suffering from several lung diseases.[1]

On May 18, 1971, Whicker filed a claim with the Bureau of Workmen's Compensation. He filed for benefits under the Federal "black lung" act, 83 Stat 792–804 (1969), 30 USC 901–960, in November of 1971 and began receiving benefits in November of 1972. Subsequently, a referee awarded Whicker workmen's compensation benefits and the appeal board affirmed.

Our Court granted leave to appeal and considered three issues raised by Chrysler Corporation.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Milford Whicker died on October 31, 1975. Joan Farmer, administratrix of his estate, has been substituted as plaintiff-appellee in this case. For the purposes of discussion we will refer to Whicker as plaintiff-appellee.

In *Whicker v Chrysler Corp* (Docket No. 23230, decided April 6, 1976 [unreported]), we affirmed the award. Shortly after oral arguments our Supreme Court decided the case of *Stanley v Hinchliffe & Kenner,* 395 Mich 645; 238 NW2d 13 (1976). Pursuant to a Supreme Court order we are now reconsidering one issue in light of the *Stanley* decision.[2]

In *Stanley,* the plaintiff had worked in both California and Michigan. He had been awarded workmen's compensation benefits in California and then filed a claim in Michigan for the same medical problems. Our Supreme Court held that credit should be given to the Michigan employer for the prior California award. Appellant contends that the *Stanley* decision requires an offset of the "black lung" benefits from Whicker's compensation award.

In our original opinion of this case we stated that

"An employer has no standing to argue that plaintiff is receiving other money unless the employer is paying that money also."

We recognize that this language is in conflict with the *Stanley* decision, and agree that it cannot stand. However, appellant has failed to persuade us that in view of the *Stanley* case we must offset the Federal benefits involved in the present case.

The "black lung" act was enacted in 1969 as part of extensive legislation concerning the health and safety of coal miners.[3] Its purpose is stated in

[2] Pursuant to GCR 1963, 853.2(4) the Supreme Court of Michigan in lieu of granting leave to appeal resubmitted this case to our Court for rehearing as to issue one only and denied leave as to the other two issues.

[3] 83 Stat 742 *et seq.* (1969), 30 USC 801, *et seq.* Title IV, Black Lung Benefits, was amended in 1972. Because plaintiff-appellee filed in 1971 our discussion centers around the original version of the act. The amendments do not affect the question presented in this case.

§ 401 of the act as follows:

"Congress finds and declares that there are a significant number of coal miners living today who are totally disabled due to pneumoconiosis arising out of employment in one or more of the Nation's underground coal mines; that there are a number of survivors of coal miners whose deaths were due to this disease; and that few States provide benefits for death or disability due to this disease to coal miners or their surviving dependents. It is, therefore, the purpose of this subchapter to provide benefits, in cooperation with the States, to coal miners who are totally disabled due to pneumoconiosis and to the surviving dependents of miners whose death was due to such disease; and to ensure that in the future adequate benefits are provided to coal miners and their dependents in the event of their death or total disability due to pneumoconiosis." 83 Stat 792 (1969), 30 USC 901.

In essence, the original plan provided that the Federal government would "pick up the lifetime cost of the huge backlog of claims that had accumulated over the decades, while the industry would pick up the burden of paying the claims of those still working" through state compensation laws that meet Federal criteria.[4] 1972 US Code & Ad News 2305, 2336.

Section 413 of the act states that one must file for state workmen's compensation prior to or at

[4] Part C of the act is devoted to claims filed after December 31, 1972. Under that part the Secretary is directed to publish a list in the Federal Register of state workmen's compensation laws which are determined to provide adequate coverage. As stated above, we are concerned basically with the act and provisions that applied in November of 1971. However, we do point out that the act reflects Congress' awareness of state compensation laws both at the time of the original act and at the time of the amendment, and the need to improve them with relation to coal miners. To us, this mention of the state's inadequacy in this area also expresses the idea that these benefits are supplemental. (Discussed infra within body of opinion.)

the same time as filing a claim for black lung benefits unless such filing would be futile.

Section 412 provides for a reduction of Federal benefits by amounts received under workmen's compensation and other listed state benefits.

Section 414 states that:

"No benefits shall be paid under this part to the residents of any State which, after December 30, 1969, reduces the benefits payable to persons eligible to receive benefits under this part, under its State laws which are applicable to its general work force with regard to workmen's compensation, unemployment compensation, or disability insurance." 83 Stat 795 (1969), 30 USC 924(d).

It is clear to us that black lung benefits are meant to be at least in part supplemental to state benefits, and to the extent that the benefits are duplicitous the Federal government would offset the appropriate amount. Additionally, under § 414, if we offset black lung benefits from our workmen's compensation benefits, Whicker would receive no Federal benefits and would thus be penalized with a *double setoff.* 1A Larson, Workmen's Compensation Law, § 41.90, p 7-338 (1973).

In *Stanley,* the Court in reaching its decision concluded that it would follow the lead of other jurisdictions that subtract an award made in the first state from an award made in the second state. *Stanley v Hinchliffe & Kenner, supra,* at 655, 659. By way of contrast, only three states allow offsets of Federal benefits from state benefits, and those states have statutory provisions allowing such offsets. Absent these specific offset provisions, "the receipt of federal benefits does not ordinarily affect a worker's right to workmen's compensation benefits." 4 Larson, Workmen's Compensation Law,

§ 97.35, p 18-30–18-31 (1976). We have found no such authorization in our statute.[5]

The thrust of the *Stanley* decision is an interpretation of § 811 of the Workmen's Compensation Act that avoids double recovery.[6] As per our previous discussion, appellee will receive no double recovery in the present case.

On page 656 the Court in *Stanley* stated:

"Section 811 concerns savings, health insurance, and various benefit fund programs which might *supplement* the workmen's compensation award. This section does not address itself specifically to the question of the effect of workmen's compensation awards made by other jurisdictions." (Emphasis supplied.)

We agree with the *Stanley* decision and hold that § 811 applies to supplemental benefits and not workmen's compensation benefits.[7]

In conclusion, we find that contrary to appellant's contention there is no threat of double recovery in the instant case. In fact any offset would result in the stoppage of "black lung" benefits totally.

Affirmed. Costs to appellee.

[5] *Woodson v Department of Social Services,* 27 Mich App 239; 183 NW2d 465 (1970), involves an offset of Federal benefits. However, in the *Woodson* case the Federal statute provided for the offset.

[6] MCLA 418.811; MSA 17.237(811). "No savings or insurance of the injured employee, nor any contribution made by him to any benefit fund or protective association independent of this act, shall be taken into consideration in determining the compensation to be paid hereunder nor shall benefits derived from any other source than those paid or caused to be paid by the employer as provided in this act, be considered in fixing the compensation under this act, except as provided in section 161 and section 359."

[7] Congress cleared up the matter in the 1972 amendments by stating that "this part [payment of benefits] shall not be considered a workmen's compensation law or plan". 83 Stat 794 (1969), 30 USC 922(b), as amended by 86 Stat 150, 151, 153 (1972), 30 USC 922(b).