**Daisy Mae D. JACKSON, on behalf of herself and on behalf of her minor children and grandchildren, Barbara Jackson, Lahouma Jackson, Delana Jackson, Kenisha Jackson, Daisy Mae Jackson, and Natasha Jackson, as their next friend**

v.

**Roger P. GUISSINGER, in his official capacity as Secretary of the Louisiana Department of Health and Human Resources.**

Civ. A. No. 83–2695.

United States District Court,
W.D. Louisiana,
Lafayette-Opelousas Division.

June 12, 1984.

Henry C. Remm, Jr., Acadiana Legal Services Corporation, Lafayette, La., for plaintiffs.

Jerry H. Bankston, Staff Atty., State of La., Dept. of Health and Human Resources, Baton Rouge, La., for defendant.

## RULING

SHAW, District Judge.

This matter comes before the Court on the motion of the defendant, Roger P. Guissinger, as Secretary of the Louisiana Department of Health and Human Resources, to dismiss the plaintiff's claims for want of jurisdiction over the subject matter and for failure to state a claim upon which relief may be granted. Also before the Court are cross-motions for summary judgment on the merits. For the reasons assigned below, the Court finds that it has jurisdiction over the plaintiff's claims but concludes that the defendant is entitled to judgment in his favor as a matter of law on all but one of the plaintiff's claims.

*Background*

Daisy Mae D. Jackson sues on behalf of herself and her minor children and grandchildren under 42 U.S.C. § 1983 for declaratory and injunctive relief involving several alleged violations of federal statutory and constitutional law by the defendant in his administration of Louisiana's Aid to Families with Dependent Children (AFDC) and Medicaid programs. The basic facts underlying the plaintiff's claim are not disputed. On May 25, 1983, the Louisiana Office of Family Security (OFS) terminated the plaintiff's AFDC benefits effective June 1983 because of an alleged failure to submit a required monthly report by May 23, 1983. Jackson's appeal of this termination was heard on July 20, 1983, and the OFS determined on August 9, 1983 that Jackson had in fact deposited the report with the agency before the deadline. The hearing examiner recommended that Jackson's benefits be reinstated retroactively to June 1983 if the

claimant was otherwise eligible for benefits.

In the meantime, Jackson received a notice dated July 15, 1983 stating that her "application" for renewed AFDC benefits had been denied because of her alleged receipt of a lump sum payment of $11,745.21. An OFS Appeal Decision affirmed this determination on October 18, 1983. The lump sum was allegedly received as part of a settlement of a personal injury action brought by Jackson.

According to the plaintiff's brief, Jackson's attorney loaned her $11,000 to purchase a mobile home prior to the negotiation and funding of the personal injury settlement. The loan was made on the condition that she repay it out of any proceeds obtained from a settlement or judgment in her favor. Later, Jackson negotiated a $19,000 settlement of her claim with Continental Insurance Company. When the settlement draft arrived, Jackson's attorney deducted his attorney's fees and expenses, past due medical expenses, and the repayment of the $11,000 loan before issuing a check to Jackson for the remaining $745.21.[1]

The OFS determined that the alleged receipt of an $11,745.21 lump sum payment rendered Jackson ineligible for AFDC benefits from August 1982 through September 1983 with a $445.21 residual amount to be allocated to her October 1983 eligibility determination.[2] The OFS also terminated Jackson's eligibility for Medicaid, which she had been automatically entitled to as an AFDC recipient. The agency did not provide Jackson with a pretermination opportunity to establish eligibility for Medicaid on other grounds. The agency also denied a request to reduce the lump sum and thereby shorten the period of ineligibility on the basis of expenditures to meet alleged life-threatening circumstances. The OFS is presently recouping past benefits allegedly overpaid from Jackson's current AFDC benefits. The recoupment covers payments made from August 1982 through May 1983, a period in which the agency determined that the lump sum was available for the support and maintenance of the Jackson family.

The various motions before the Court raise the following issues:[3]

---

1. Actually, the affidavits and exhibits on file lend credence to a quite different story. The plaintiff introduced a copy of the second, unfavorable, appeal decision as an exhibit accompanying her Memorandum in Opposition to the Defendant's Motion to Dismiss. The appeal decision states that the state court record in the personal injury suit contains a receipt and release signed by Jackson on *June 21, 1982*. The document in the state court records reflects that Jackson acknowledged the receipt of $19,000.00 cash in hand from Continental Insurance Company on that date. *Appeal Decision* at 1–2, 4. Jackson's own affidavit states that she purchased the mobile home on *the same day* that she received the $11,000 loan check from her attorney, Mr. McClelland. The affidavit of Farris Romero, of F & M Mobile Homes, Inc., states that Jackson bought the mobile home on *June 22*, 1982. The invoice submitted as an exhibit by the plaintiff also gives June 22, 1982 as the purchase and payment date. The affidavits and invoice also indicate that the check given to the mobile home dealership bore the same number, 20355, as the check given to Jackson by her lawyer. Thus, there is a strong indication in this record that, contrary to the plaintiff's assertions in her briefs, the settlement had been negotiated and funded *the day before* both the purchase of the mobile home and the

loan from Jackson's attorney. The plaintiff might of course object to the recital in the Appeal Decision as being hearsay, yet it is the plaintiff herself who introduced this exhibit. Moreover, this particular item falls within the exception to the hearsay rule for admissions by a party. The Court need not determine which version of the facts is the correct one, however, because the defendant is entitled to summary judgment in its favor on the lump sum issue even on the facts as recited by the plaintiff.

2. The agency applied the monthly standard of need for six persons, $782.00, for August through December, 1982 and the increased montly standard of need, $834.00, for January through September 1983 against Jackson's total June income of $11,745.21 plus $116.00 Social Security benefits to determine the period of ineligibility and the residue. *October 18, 1983 Appeal Decision*, 2. This effectively rendered Jackson completely ineligible through October 1983 and until November 1983 because the $445.21 residue exceeded the AFDC flat grant amount for October.

3. As the Court has considered matters outside the pleadings in resolving the merits of this case, the defendant's motion to dismiss for fail-

(1) whether the Court has jurisdiction over the plaintiff's claims under 28 U.S.C. § 1343(3),

(2) whether, in the event that jurisdiction does not exist over these claims under section 1343(3), the jurisdictional limitations of section 1343(3) override and thus preclude resort to the general grant of federal question jurisdiction contained in 28 U.S.C. § 1331,

(3) whether the proceeds of the personal injury settlement are correctly characterized as a "resource" rather than "income" under the applicable federal and state laws and regulations,

(4) whether, if the sum is "income", the $11,000 was "available for current use" as income for purposes of the lump sum rule contained in Section 402(a)(17) of the Social Security Act, 42 U.S.C. § 602(a)(17) and section 15–842(N) of the OFS Payment Assistance Manual,

(5) whether the $745.21 remaining after the repayment of the attorney's loan should have been excluded from the eligibility determination under 42 U.S.C. § 602(a)(7)(B) and 45 C.F.R. § 233.20(a)(3)(i)(B), *as amended by* 47 Fed.Reg. 5648, 5656, 5674 (February 5, 1982),

(6) whether Jackson's expenditures for electrical work and service qualified as expenditures for life-threatening circumstances, entitling Jackson to a reduction in the lump sum that was counted against her AFDC eligibility,

(7) whether the manner in which the OFS terminated Jackson's AFDC and Medicaid benefits violated the notice, hearing and aid pending review provisions of the applicable federal regulations,

(8) whether the OFS violated federal regulations by failing to automati-

cally redetermine Jackson's eligibility for Medicaid under the medically needy program upon the cessation of eligibility for Medicaid under the AFDC program,

(9) whether, under the fourteenth amendment's guarantee of procedural due process, the plaintiff was entitled to pretermination notice that the lump sum rule had changed, that the rule would apply to the facts of this case, and that the lump sum would be reduced upon verification of expenditures for life-threatening circumstances,

(10) whether the plaintiff was denied procedural due process when the OFS notices failed to inform her of her right to receive AFDC and Medicaid benefits pending review of the termination decision,

(11) whether application of the lump sum regulations denied the plaintiff of equal protection of the laws by treating a family with a residue under the lump sum allocation that exceeds the flat grant amount but is less than the standard of need differently from a family that receives an equivalent amount in the same month.

*Jurisdiction*

 Plaintiff asserts that the Court has jurisdiction over her section 1983 claims under both the civil rights jurisdiction statute, 28 U.S.C. § 1343(3), and the general federal question statute, 28 U.S.C. § 1331. Section 1343(3) grants original jurisdiction over claims to redress the deprivation of rights secured by the Constitution or by a federal statute providing for equal rights. The Social Security Act is not a statute providing for equal rights and therefore a section 1983 claim based solely on a state's violation of the Social Security Act does not come within the Section

ure to state a claim upon which relief can be granted is thereby consolidated into his motion for summary judgment. *See* F.R.C.P. 12(b).

1343(3) jurisdictional grant. *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979). Section 1343(3) jurisdiction does exist, however, over a "substantial constitutional claim", and once such jurisdiction is established, the district court can exercise pendent jurisdiction over related federal statutory claims arising out of the same "common nucleus of operative fact". *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). Thus, in the instant case, plaintiff must present a substantial constitutional claim before the Court can assert jurisdiction over her statutory claims under section 1343(3).

■ Up until the time of oral argument, plaintiff's counsel had failed to articulate any constitutional claims of substance. The complaint merely asserted violations of the Supremacy Clause and the Due Process and Equal Protection Clauses of the fourteenth amendment. The alleged Supremacy Clause "violation" does not give rise to jurisdiction under § 1343(3). *Chapman, supra,* 441 U.S. at 612–15, 99 S.Ct. at 1913–15. In her Memorandum in Support of Plaintiffs' Motion for Summary Judgment, Jackson relies upon *Goldberg v. Kelley,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) for the proposition that the fourteenth amendment's guarantee of procedural due process entitled her to pre-termination notice that the lump sum rule had been adopted, that the rule would be applied on these facts and that an exclusion for expenditures for life-threatening circumstances existed. This claim is not only patently meritless but is also foreclosed by the Supreme Court's affirmance of the decision of the three judge court in *Whitfield v. King,* 364 F.Supp. 1296 (M.D.Ala.1973), *aff'd without opinion,* 431 U.S. 910, 97 S.Ct. 2166, 53 L.Ed.2d 221 (1977). As Judge Godbold pointed out in *Whitfield, Goldberg* involved only adjudicative decisions to terminate an individual recipient's benefits based on the particular facts of that individual's case. The fourteenth amendment does not compel prior personal notice of state-wide policy changes implemented pursuant to an agency's legislative

rulemaking function. *Accord Cardinale v. Mathews,* 399 F.Supp. 1163, 1172 (D.C. 1975); *Provost v. Betit,* 326 F.Supp. 920 (D.Ver.1971).

■ Indeed, Jackson's counsel did not even raise the foregoing procedural due process claim at oral argument. Counsel instead chose to stand on the bare allegations of the complaint without further elucidation, relying on Justice Rehnquist's *Hagans* dictum that jurisdiction will exist if a plaintiff does nothing more than plead a constitutional claim with a straight face. *Hagans, supra,* 415 U.S. at 564, 94 S.Ct. at 1392 (Rehnquist, J., dissenting). This reliance upon Justice Rehnquist's dissenting hyperbole was clearly misplaced, however, for the mere assertion of a constitutional claim does not vest the Court with jurisdiction under section 1343(3). *Curtis v. Taylor,* 625 F.2d 645, 650 (5th Cir.1980); *Atwell v. Nichols,* 608 F.2d 228, 231 (5th Cir.1979). Counsel, after some prodding by the Court, finally made the argument that Jackson was denied equal protection of the laws because other AFDC recipients who received loans were not rendered ineligible. As Jackson was rendered ineligible not because of the loan from her attorney but because of her alleged receipt of settlement funds, this claim is completely devoid of merit and hence lacks the substantiality required for jurisdiction under section 1343(3).

■ Although counsel for the plaintiff failed to present a substantial constitutional claim at oral argument, a subsequent amendment to the complaint does raise such a claim. The second amended complaint alleges that the plaintiff was not provided a hearing prior to the termination of her AFDC and Medicaid benefits. A supplemental brief contends that the termination notices were procedurally deficient because they failed to inform the plaintiff of a right to AFDC benefits and Medicaid pending review of the termination decision. The allegation and contention together clearly present a substantial procedural due process claim in light of *Goldberg.*

Accordingly, the Court has jurisdiction over the claim under section 1343(3) and will exercise pendent jurisdiction over the statutory claims arising from the termination of the plaintiff's AFDC and Medicaid benefits.

This extended analysis of jurisdiction under section 1343(3) would be unnecessary, of course, if section 1331 supplies an alternative basis for jurisdiction over the statutory claims. Many courts have assumed, without deciding, that federal question jurisdiction is readily available over purely statutory section 1983 welfare claims when the now-repealed jurisdictional amount requirement does not pose a bar. *E.g., Silva v. Vowell*, 621 F.2d 640, 644 n. 4 (5th Cir.1980). Yet an issue remains as to whether the general grant of federal question jurisdiction overrides the Congressional decision, embodied in section 1343(3), to withhold federal jurisdiction where the section 1983 claim does not raise a violation of the Constitution or of a statute providing for equal rights. *See* P. Bator, P. Mishkin, D. Shapiro, & H. Wechsler, *1981 Supplement to Hart and Wechsler's The Federal Courts and the Federal System*, 246 n. 2 (1981). The legislative history of the Civil Rights Act of 1871, including the revisions of 1874 and 1911, may provide support for the view that Congress does not intend for federal jurisdiction to extend to section 1983 claims based solely on alleged violations of statutes that do not provide for equal rights. *See generally, Chapman*, 441 U.S. at 629–40, 645, 99 S.Ct. at 1922–27, 1930 (Powell, J., concurring). Justice Powell's concurring opinion in *Chapman* suggests that Congress decided to limit jurisdiction under the precursor to section 1343(3) to constitutional and "equal rights" statutory claims at least as early as the enactment of the Revised Statutes of 1874. *See Chapman*, 441 U.S. at 631–35, 99 S.Ct. at 1923–25. The limitations of this jurisdictional grant most likely derive from the original Civil Rights Act of 1871. *Id.* Therefore, the question arises as to wheth-

er the 1875 federal question statute repeals that choice for a limited federal jurisdiction over civil rights claims by implication. *Cf. Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 96 S.Ct. 1989, 48 L.Ed. 540 (1976) (venue of the Securities Exchange Act of 1934 does not override venue under the National Bank Act, passed in 1863); *United States v. United Continental Tuna Corp.*, 425 U.S. 164, 96 S.Ct. 1319, 47 L.Ed.2d 653 (1976) (litigants cannot avoid the jurisdictional restrictions of the Public Vessels Act under a later-enacted amendment to the Suits in Admiralty Act): *Eastern States Petroleum Corp. v. Rogers*, 280 F.2d 611, 613 (D.C.Cir.), *cert. denied*, 364 U.S. 891, 81 S.Ct. 222, 5 L.Ed.2d 187 (1960) (cases within the jurisdiction of the Customs Court cannot be brought under the federal question jurisdiction notwithstanding the absence of an express exception in section 1331). Congress may well have intended that federal judicial resources be directed to only those types of claims that originally rendered enactment of civil rights legislation necessary. As for claims that involve "civil rights" only insofar as a violation of a federal statute is concerned, Congress may be content to entrust these claims to the state courts[4] and thereby preserve federal judicial resources for claims that are civil rights claims in substance as well as in name. *Cf. Chapman*, 441 U.S. at 645, 99 S.Ct. at 1930 (Powell, J., concurring). Yet the Court must leave this issue for another day, and will now proceed to the merits.

*Alleged Misapplication of the Lump Sum Rule*

The computation of AFDC eligibility and benefits in Louisiana revolves around two basic figures. The first, the standard of need, reflects the actual economic need of a family of a given size and is adjusted annually on the basis of changes in the Consumer Price Index. The second, the flat grant amount, states the amount of money that the State will actually pay the family in

---

**4.** State courts have jurisdiction over these claims. *See Maine v. Thiboutot*, 448 U.S. 1, 100

S.Ct. 2502, 65 L.Ed.2d 555 (1980).

AFDC benefits.[5] AFDC recipients are required to file a monthly report of income that is received and which is not excluded from the eligibility computation. All income not excluded under the regulations is applied against the family's AFDC benefits in the corresponding payment month. If income in one month exceeds the flat grant amount, then the family will be wholly ineligible in the following month.

"Resources", as well as "income", can also be counted against AFDC eligibility and the amount of benefits. Certain resources, such as the family dwelling, are exempted, however, and do not affect eligibility. In addition, a family is allowed to accumulate up to $1,000 in non-exempt resources without detriment to their AFDC eligibility. Any non-exempt resources bringing the total over and above the $1,000 exclusion level are considered along with monthly income to determine AFDC eligibility in the following month.

Before the passage of the Omnibus Budget Reconciliation Act (OBRA), Pub.L. No. 97–35, 95 Stat. 357–933 (1981), receipt of a large lump sum payment would be considered as income only in the month of receipt and would thus disqualify a family on the basis of the receipt of "income" only for the one corresponding payment month. Thereafter, any remaining lump sum monies would be considered as a "resource". Thus, if the family spent enough of the lump sum to bring their total non-exempt resources down below the $1,000 exclusion level, their AFDC benefits would continue unaffected.

Congress adopted what will be referred to herein as the "lump sum rule" with the passage of OBRA. Under this rule, the lump sum, together with other non-excluded income in the month of receipt, is divided by the applicable standard of need to determine the total number of months of AFDC ineligibility. Any remainder left over from this division is considered as income received in the first month following the ineligibility period, which begins with the payment month following the month of receipt of the lump sum. Section 402(a)(17) of the Social Security Act, 42 U.S.C. § 602(a)(17); Louisiana AFDC Program Policy 15–842(N). If the residual sum exceeds the state's flat grant amount for the family, the family will be rendered wholly ineligible in the corresponding payment month. Otherwise, the residue will serve to reduce the assistance actually paid to the family in that month. Application of the rule can thus disqualify a family for a considerably longer period of time than before because the ineligibility operates without regard to how quickly a family spends the lump sum.

As previously noted, the OFS applied the lump sum rule to render Jackson ineligible for AFDC on the view that she had received $11,745.21 of income in settlement of a personal injury claim. The plaintiff first contends that this provision should not have been applied here because these settlement proceeds are properly characterized as a "resource" rather than "income".[6] Yet the authorities relied upon by the plaintiff do not support this contention. The plaintiff makes reference to the preamble to OBRA which states that: "States have always been permitted to exclude income which the recipient receives as settlement for back medical bills, compensation for loss of resources, etc., so long as the money is used for this purpose." 47 Fed.Reg. 5656 (Feb. 5, 1982). This statement clearly implies that sums received that do *not* compensate past economic losses should not be excluded from the income determination. The same observation applies to an "Action Transmittal" setting forth HEW policy in regard to treatment of refund checks received in connection with the settlement of a suit against the Department of Housing

---

**5.** In 1982, the need standard for the Jackson family was $782, but the flat grant amount was only $296.

**6.** If the Court concluded that the $11,745.21 was "resource" rather than income, then Jackson would be disqualified from AFDC eligibility for a month at most because she immediately spent the lump sum down below the $1,000 non-exempt resource exclusion.

and Urban Development. As the payments were "in the nature of a refund of [past] out-of-pocket expenses," they were treated as "resources" rather than as "income" for purposes of AFDC eligibility.

▮ In this case, the $11,745.21 in question was received not as compensation for past economic losses but rather in settlement of a claim for non-pecuniary damages. There is absolutely no indication in the record that the money was either received for or applied to past economic losses. The OFS specifically excluded the amounts applied to the payment of attorney's fees generated in the pursuit of the claim. Therefore, under the authorities referred to above, these net settlement proceeds are not the sort of receipts that a state may permissibly exclude from the AFDC income determination.

The plaintiff also points to an excerpt from a handbook purportedly issued by a federal Public Assistance Administration in 1957. The excerpt is directed only to a specific proposed policy of an unidentified State, does not address itself to the AFDC program in particular, and discusses the significance of varied lump sum payments in the most cryptic terms. The excerpt does not indicate that, as a matter of mandatory federal policy, the OFS must treat a personal injury settlement as a "resource" rather than "income" for purposes of AFDC eligibility. In fact, the plaintiff's final submission on this issue reinforces this last point. The plaintiff quotes a Department of Health and Human Services

policy statement for Supplemental Security Income which provides: "States are permitted their choice of treating non-recurring or windfall lump sum payments as income or resources." This statement speaks for itself. The OFS has not violated any Federal regulation or agency policy in treating the personal injury settlement involved here as "income" rather than a "resource".[7]

▮ The plaintiff further argues in this same vein that the OFS cannot now treat the settlement proceeds as "income" because the agency previously treated such sums as "resources". The plaintiff contends that the OFS must continue its past treatment of personal injury settlements until it complies with the notice and rulemaking provisions of the Louisiana Administrative Procedure Act. Yet nothing on file indicates that the OFS treated a personal injury settlement as anything other than as "income" in the first month of receipt under its past practices. *Cf.* S.Rep. No. 139, 97th Cong., 1st Sess. 505, *reprinted in* 1981 U.S.Code Cong. & Ad.News, 396, 771 (the report notes that, before OBRA, lump sums were treated as income in the first month of receipt and then considered as resources thereafter). Similarly, nothing on file indicates that the OFS failed to comply with the Louisiana statute. Under Federal Rule of Civil Procedure 56(e), an argument thus lacking in factual support can carry absolutely no weight on these cross-motions for summary judgment, particularly in light of the other dis-

---

**7.** The plaintiff cites cases from the courts of several states in support of her contention that a personal injury settlement is a "resource" and not "income". Yet not one of these cases presents a "resource" versus "income" issue. Thus, any reference to settlement proceeds as a "resource" in these opinions has no bearing on the issue presented here. In *Langs v. Harder,* 165 Conn. 490, 338 A.2d 458 (1973), *cert. denied,* 416 U.S. 994, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974), the court described settlement funds as an "available resource" merely as a means of shorthand reference to the "income and resources available" language found in the applicable regulations. Similarly, in *Henderson v. Illinois Dept. of Public Aid,* 127 Ill.App.2d 77, 261 N.E.2d 697 (1970), it is abundantly clear that the

court uses "resource" as a synonym for "income" because the applicable state statute did not even contain the term "resource". The court in *Fitzpatrick v. Illinois Dept. of Public Aid,* 52 Ill.2d 218, 287 N.E.2d 666 (1972) likewise was not called upon to distinguish "income" from "resource", as it determined that a personal injury recovery fell within the "any other income or resources" language of the Social Security Act. The court in *Cumberland County Welfare Board v. Rodriquez,* 144 N.J.Super. 365, 365 A.2d 723 (1976) concluded that the personal injury settlement did not qualify as either "income" or a "resource" and thus the decision is silent as to any distinction between the two terms.

crepancies between the evidence on file and the recitals of fact given in the plaintiff's briefs.[8] Moreover, resolution of this issue regarding procedure under the APA may be one that is best left for resolution in state court. *See French v. Fischer*, No. 81–4853, slip op. at 55–58 (E.D.La., Aug. 10, 1983).

The plaintiff's principal contention is that the lump sum rule should not have been applied here because the $11,000 was never "available for current use" as required by 45 C.F.R. § 233.20(a)(3)(ii)(D). Under this regulation, income is "considered available both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance." *Id.* Initially, it would seem that the settlement proceeds were "actually available" to Jackson. No matter how she and her attorney juggled the various checks, common sense dictates that Jackson would have to first receive the $11,000 before she would be able to repay the loan. That is, she could not repay the attorney unless she first had something to repay him with. The mere fact that the plaintiff chose to apply the money to a loan repayment cannot change the fact that she first received the money.[9]

In any event, the plaintiff clearly had a legal interest in a liquidated sum when she reached a settlement agreement with Continental Insurance Company. *See* La.Civ. Code art. 3078 (a compromise has the binding force of a judgment). The plaintiff had the legal ability to make the proceeds available for support and maintenance because she could have enforced the settlement at any time had Continental failed to fund the settlement. Thus, the funds were "available for current use" under the applicable federal and state regulations.

The fact that the plaintiff may have incurred an $11,000 debt prior to both the settlement agreement and the receipt of the insurance draft would not render the proceeds unavailable. Jackson's right to the settlement proceeds and Continental's corresponding obligation to fund the settlement were in no way diminished because of Jackson's obligation to repay her lawyer on the mobile home loan. The plaintiff argues that she never had the legal ability to make the funds available for support and maintenance because they were "earmarked" for repayment of the loan, pointing to various comments in the preamble to OBRA's implementing regulations. Yet when these comments speak of a sum of money earmarked for a specific purpose, they clearly refer to sums that are *received* for a specific purpose *and* applied to *that* purpose. Settlement monies received to compensate for back medical bills serves as the primary example of such an "earmarked" sum in the comments. *See* 47 Fed.Reg. at 5656–57 (Feb. 5, 1982). Here, on the other hand, the reason for receiving the money, settlement of the personal injury claim, bears absolutely no relationship to the subsequent use of the funds, repayment of a loan taken out to purchase a mobile home. In this situation, the fair inference to be drawn from the agency comments is that states are not permitted to exclude settlement proceeds such as these from income "available for current use." A consistent interpretation of the regulations leads to the conclusion that Jackson had the legal ability to make the funds available for support and maintenance.

This conclusion is further supported by the legislative history of OBRA. Under the pre-OBRA law, a lump sum was treated as "income" only in the month of receipt. Thereafter, the sum would be considered a "resource". Thus, if a family immediately spent enough of the lump sum to bring

---

**8.** See note 1, *supra.*

**9.** Indeed, it is extremely unlikely that the insurance draft received in settlement could have been negotiated without Jackson's endorsement.

There could be no question that the $11,000 was "actually available" if the Court was operating under the facts contained in note 1, *supra.* Under those facts, the settlement was confected and funded the day before the loan and purchase of the mobile home.

their total resources back below the allowable amount, then they would be rendered ineligible for AFDC benefits only in the payment month corresponding to the month of receipt. Congress adopted the lump sum rule to remedy this "preverse effect of encouraging the family to spend such income as quickly as possible in order to retain AFDC eligibility." S.Rep. No. 139, 97th Cong., 1st Sess. 505 (1981), U.S. Code Cong. & Admin.News 1981, p. 771. Whatever the wisdom of the lump sum rule, its intent would surely be frustrated if a recipient could retain AFDC eligibility by spending the money with even greater dispatch than had been practiced before the adoption of the rule. Thus, the Court cannot conclude that a recipient can, by taking out a loan and unilaterally "earmarking" the proceeds of a lump sum for repayment of that loan, deprive herself of "the legal ability to make such sum available for support and maintenance." Jackson's decision to divert the proceeds to another use stands as the sole reason for the funds not being applied to the monthly support and maintenance of the family.

 In a related argument, the plaintiff contends that the OFS erred in refusing to exclude the $745.21 in settlement proceeds remaining after the repayment of the mobile home loan. Jackson argues first that the lump sum rule should not have been applied to this residual sum because it did not exceed the applicable standard of need for the family at the time, and second that the $745.21 should have been excluded from the eligibility determination under the allowance for a thousand dollars of *resources* contained in 42 U.S.C. § 602(a)(7)(B). The first leg of this argument is mooted, of course, by the Court's holding that the OFS properly included the $11,000 sum in the total lump sum of $11,-745.21. The total sum clearly exceeds the applicable standard of need and the lump sum rule is thus applicable to the whole amount. The second leg of the argument likewise falls short even if the $745.21 is the only sum considered. The $745.21 in settlement proceeds is *income* in the month of receipt, see pages 1296–1298, *supra,*

and this income is counted against the amount of aid for the following month under 42 U.S.C. § 602(a)(13)(A) and 45 C.F.R. § 233.35(a). The thousand dollar resource exclusion becomes relevant only in later months in the event that the family still holds the sums previously counted as income. Thus, the $745.21 was properly counted against Jackson's AFDC benefits regardless of whether the lump sum rule was applicable.

### The Life-Threatening Circumstances Exception

Jackson next argues that her expenditures for obtaining electrical service for the mobile home should be credited against her lump sum ineligibility under 45 C.F.R. § 233.20(a)(3)(ii)(D) and Louisiana AFDC Program Policy 15–842(A). The federal regulation provides:

".... The State may shorten the period of ineligibility where it finds that a life-threatening circumstance exists, and the non-recurring income causing the period of ineligibility has been or will be expended in connection with the life-threatening circumstance. Further, until that time the non-recurring income must have been used to meet essential needs and currently the assistance unit must have no other income or resources sufficient to meeting the life-threatening circumstance."

Under the regulation, an expenditure for life-threatening circumstances is credited against lump sum ineligibility only to the extent that lump sum proceeds were used in responding to the life-threatening situation. The plaintiff does not claim that the $11,000 spent for the mobile home was expended in connection with a life-threatening circumstance. Therefore, the maximum amount that can possibly be credited against Jackson's lump sum ineligibility is the $745.21 remaining after the mobile home purchase.

 Jackson contends that the OFS erred by refusing to credit the following expenditures: (1) a payment of $700 on

August 29, 1982 to Thomas Electric Service to erect a utility pole and connect the mobile home to the utility line, (2) a payment of $280.90 on September 4, 1982 to F & M Mobile Home, Inc. for installation of light switches and circuit breakers in the mobile home, and (3) a payment of $135 as a utility deposit to Teche Electrical Cooperative, Inc. Yet the error of omission, if any, in this case did not occur at the hands of a state actor. The OFS Appeal Decision, which was submitted as an exhibit by the plaintiff, indicates that plaintiff's counsel did not present these specific items for consideration at the appeal hearing. In her brief, Jackson apparently seeks to excuse this omission by asserting that she had no knowledge of the applicable regulation prior to the hearing. This assertion is belied by the Appeal Decision, which reveals that plaintiff's counsel argued the provision to the Hearing Officer and contended that a debt of $1,726 to Teche Electric for overdue utility bills and a debt of $500 for insurance on the mobile home qualified under the exception. Moreover, Jackson's ignorance of the regulation would in no way be chargeable to OFS officials. Although federal regulations require the agency to notify a recipient of the specific regulations *supporting* the initial decision to terminate benefits, see 45 C.F.R. § 205.10(a)(4)(i)(B), the OFS is under no duty to inform the recipient before the appeal hearing of the existence and contents of all regulations that might conceivably apply to her case. Furthermore, the OFS is not charged with a responsibility to uncover and develop evidence to support the claimant's position.

■ As the OFS had no duty to provide Jackson with pre-hearing notice of the life-threatening circumstance exception, and as the OFS had no duty to develop and present Jackson's evidence at the hearing, the responsibility for the omission of the three items listed in this suit from Jackson's case at the appeal hearing clearly lies with the plaintiff and her counsel. Official action or inaction had absolutely nothing to do with Jackson's failure to obtain a credit for these expenditures. Even if denial of a credit for these expenditures would have

violated federal regulations, such a denial and violation did not occur here through official action. The failure of the attorney to present the three expenditures for consideration prevented any possible credit on this basis. Such an omission does not constitute action under color of state law. *See United States ex rel. Simmons v. Zilbilich,* 542 F.2d 259, 261 (5th Cir.1976). Thus, Jackson has failed to present a claim under section 1983 in regard to this particular alleged violation of federal law because the alleged violation was not accomplished by anyone acting under color of state law.

■ In addition, the plaintiff has not shown that the OFS would have violated federal regulations even had it considered and denied a credit for these three expenditures. The plaintiff's citation to the preamble to the federal regulations, which does little more than repeat the regulation verbatim, an unrelated federal regulation (which the Court cannot find in its copy of the Code of Federal Regulations), and a North Carolina regulation are singularly unpersuasive on this point. Furthermore, a denial of credit for these expenditures would have also been consistent with state policy. The examples given in state policy 15–842(A)—burial expenses after the death of an immediate family member, nonreimbursible medical expenses for an injured or seriously ill immediate family member, and expenses to repair property damages caused by a natural disaster—indicate that the State views a life-threatening circumstance as one in which external forces beyond the control of the recipient create an immediate economic need. Here, the expenditures came about because of Jackson's decision to leave the former family dwelling and purchase a mobile home. A life-threatening circumstance cannot be found to exist merely because a recipient of benefits undertook more responsibilities than she could afford.

*Statutory Procedural Requirements*

The plaintiff has alleged that the defendant violated 45 C.F.R. § 205.10(a)(6) and (7)

by failing to notify the plaintiff of her right to reinstatement and payment of aid pending review of the two decisions terminating her benefits. In her supporting memorandum, however, the plaintiff points out that the OFS has changed its notices to comply with the federal regulation following Judge Sear's opinion in *French v. Fischer*, No. 81–4853 (E.D.La., Aug. 10, 1983). Jackson does not contend that the notices now violate the federal regulation. Thus, the claim for declaratory and injunctive relief based on this particular alleged violation of federal law is moot and must be dismissed for want of jurisdiction. *See, e.g., Sannon v. United States*, 631 F.2d 1247, 1250–51 (5th Cir.1980); *Silva v. Vowell*, 621 F.2d 640, 647 (5th Cir.1980); *French, supra*, slip op. at 61–63.

*Medicaid Eligibility*

As noted previously, Jackson was automatically eligible for Medicaid by virtue of her AFDC eligibility. When the OFS terminated Jackson's AFDC benefits, the agency automatically terminated her Medicaid as well. Jackson contends that this summary procedure violated federal regulations governing Medicaid eligibility. Specifically, the plaintiff argues that the agency must, upon termination of the automatic eligibility under AFDC, reconsider Medicaid eligibility to determine whether the recipient can qualify for Medicaid independently of the AFDC program. The plaintiff further contends that the agency must, if it then decides to terminate Medicaid, provide adequate and timely notice and an opportunity for a hearing prior to termination of Medicaid. Adequate notice would, of course, include notice of the right to receive aid pending review of the decision to terminate Medicaid assistance.

▆▆▆▆ These contentions hit the mark dead center. In *Stenson v. Blum*, 476 F.Supp. 1331 (S.D.N.Y.1979), *aff'd without opinion*, 628 F.2d 1345 (2d Cir.) *cert. denied*, 449 U.S. 885, 101 S.Ct. 239, 66 L.Ed.2d 111 (1980), the court held that a state agency must reconsider Medicaid eligibility after the termination of automatic eligibility under the Supplemental Security Income program. The court further held that the agency must continue Medicaid benefits with adequate notice and an opportunity for a pretermination hearing if the agency ultimately decides to terminate Medicaid. *Stenson*, 476 F.Supp. at 1337–42. *See also Massachusetts Association of Older Americans v. Sharp*, 700 F.2d 749 (1st Cir.1983) (the court followed *Stenson* and held that the plaintiffs, on their request for a preliminary injunction, had demonstrated a likelihood of success on the merits of their claim that Medicaid eligibility must be redetermined upon termination of AFDC eligibility). This Court finds Judge Sweet's *Stenson* opinion to be well-reasoned and eminently sound. *Stenson's* reasoning applies as fully in the AFDC context as it does in the SSI context. Thus, the Court concludes that Jackson is entitled to prevail on her claim that her Medicaid eligibility should have been automatically redetermined and that proper notice and opportunity for hearing should have been provided prior to termination of her Medicaid benefits.

*Constitutional Claims*

The issue of whether OFS notices violate procedural due process by failing to inform recipients of their right to AFDC aid pending review has been mooted by the change in the OFS notices discussed above at pages 1300–1301. Consideration of the parallel issue regarding payment of Medicaid benefits pending review has been rendered unnecessary by the Court's conclusion that the OFS violated federal regulations by failing to inform terminated recipients of their right to receive Medicaid pending an independent review of their Medicaid eligibility.

At long last, the Court now reaches the plaintiff's final contention. Jackson urges that application of the lump sum rule denied her of equal protection of the laws. Specifically, she contends that a family with a residual sum in the last month of lump sum ineligibility is treated differently than a family that received a sum of the same amount in that same month. The lump sum family will be wholly ineligible

for benefits in the corresponding payment month if the residual sum exceeds the state's flat grant for that month. Jackson argues that the other family would not be rendered ineligible for receipt of an equivalent sum in the same month because of the $1,000 non-exempt resource exclusion contained in 42 U.S.C. § 602(a)(7)(B). Thus, the plaintiff concludes that the lump sum rule denies the lump sum family the benefit of the $1,000 exclusion.[10]

This alleged differential treatment provides the springboard for Jackson's equal protection attack on the lump sum rule. A constitutional issue never arises, however, because the argument is based on an erroneous construction of the statutes involved. As pointed out earlier in this ruling, see pages 1299–1300, *supra*, the amount received by the non-lump sum family is in fact counted against their eligibility because that amount is *income* in the month of receipt. Thus, in the month that the residue is counted, a lump sum family is treated exactly like a family that receives an amount equal to the residual sum in the same month. Both are wholly ineligible for benefits if the amount exceeds the state's flat grant amount.[11] Likewise, both are entitled to the benefit of the $1,000 non-exempt resource exclusion in the next month should they save any of the money received previously. The statute treats the two families exactly the same and therefore Jackson's equal protection argument is completely devoid of merit.

For the reasons assigned above, the defendant's motion to dismiss for want of jurisdiction over the subject matter is DENIED. The plaintiff's motion for summary judgment is GRANTED insofar as the plaintiff is entitled to a declaration that the OFS violated federal regulations when it terminated her Medicaid benefits without proper review, notice and an opportunity for a hearing. The plaintiff is also entitled to the injunctive relief requested in this regard. In all other respects, the plaintiff's motion for summary judgment is DENIED. The defendant's motion for summary judgment is DENIED insofar as the plaintiff is entitled to declaratory and injunctive relief arising from the termination of her Medicaid benefits in violation of the federal regulations. In all other respects, the defendant's motion for summary judgment is GRANTED.

---

10. For example, in the instant case, application of the lump sum rule left the Jackson with a residual sum of $445.21 to be counted as income in October 1983. As this amount exceeded the State's flat grant amount, the Jacksons were wholly ineligible for AFDC in the corresponding payment month. In her argument, Jackson seeks to contrast her family's situation with that of a family that received an isolated lump sum of $445.21 in October 1983.

11. If the residual amount or the amount received by the other family is *less* than the flat grant amount, each family will receive AFDC benefits only to the extent necessary to bring each family's total income up to the flat grant amount. *See* Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary Judgment at 9.